UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X
LI-SHAN WANG,                        :
                                     :
                Plaintiff,           :
                                     :
     -against-                       :
                                     :
PRIMERICA LIFE INSURANCE COMPANY,    :
                                     :
                Defendant.           :
- - - - - - - - - - - - - - - - - -X      09-cv-5522 (LMM)
                                     :    MEMORANDUM AND ORDER
PRIMERICA LIFE INSURANCE COMPANY,    :
                                     :
                Third-Party Plaintiff, :
                                     :
     -against-                       :
                                     :
MICHELLE XU, a/k/a YUAN MENAGER-XU,  :
a/k/a MICHELLE YUAN XU, KAYA         :
NEFTCI, an Infant by his Mother      :
and Natural Guardian MICHELLE XU,    :
MERVE NEFTCI and EMRE NEFTCI,        :
                                     :
                Third-Party Defendants. :
                                     :
- - - - - - - - - - - - - - - - - -X

McKENNA, D.J.

     Plaintiff  Li-Shan  Wang,  who  describes  herself  as  the

long-term girlfriend of Salih Neftci ("Decedent"), brings this

action  asserting  her  right  to  benefits  under  Decedent's  life

insurance policy (the "Policy") with Primerica Life Insurance

Company ("Primerica").   The suit was originally brought in New

York  state  court  against  Primerica.    Primerica  removed  the

action  to  this  Court  and  interpleaded  Decedent's  infant  sons,

Kay and Kaan Neftci, and their mother, Michelle Xu,("Xu Defendants") and Decedent's adult living children, Emre and Merve Neftci ("Neftci Defendants") (collectively, "Third-Party Defendants").  The Third-Party Defendants also assert claims to the proceeds of Decedent's Policy.  Primerica acknowledged its obligation to render payment under the Policy and deposited the Policy proceeds with this Court.  Primerica has been dismissed from the case with prejudice, and the action remains only to resolve to whom the proceeds should be paid.

Currently pending before the Court are Xu Defendants' Motion to Dismiss Wang's claim pursuant to Rule 12(c) and Rule 56 of the Federal Rules of Civil Procedure and Wang's Motion for Leave to Amend her complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

For the reasons set forth below, Xu Defendants' motion to dismiss is DENIED and Wang's motion for leave to amend is GRANTED.

## I.   Background

Decedent applied for a life insurance policy with Primerica in 1996 and Primerica issued him the Policy in March 1997.  (Xu Defs.' Rule 56.1 Statement ¶ 1; Pl.'s Rule 56.1 Counter-Statement ¶ 1; Aff. of Jonathan Warner in Supp. of Xu Defs.' Mot. to Dismiss, dated Nov. 13, 2009 ("Warner Aff.") Ex. B.)  The interpretation of Decedent's one-page policy

application (the "Application") is at the center of this dispute.[1]  Wang maintains that Decedent intended to name her as a Policy beneficiary, (Pl.'s Rule 56.1 Counter-Statement ¶ 2), whereas Xu Defendants maintain that Decedent intended to name only his three then living children as the beneficiaries and name Wang as the trustee for the children (Xu Defs.' Rule 56.1 Statement ¶ 2).  Both parties agree that no trust was identified in Decedent's Application and that no valid trust ever existed.  (Xu Defs.' Rule 56.1 Statement ¶ 3; Pl.'s Rule 56.1 Counter-Statement ¶ 3.)

Also at the center of the dispute is the significance of various letters requesting changes to Decedent's Policy that were sent to Primerica between October 2008 and Decedent's death in April 2009.

In a letter dated October 24, 2008, Decedent requested revocation of "all prior designations" and named his four living children as the Policy's beneficiaries.[2]  (Xu Defs.' Rule 56.1 Statement ¶ 6; Pl.'s Rule 56.1 Counter-Statement ¶ 6.)  Wang argues, however, that Decedent lacked capacity at this time to make these changes because of his recently

---

[1] The Application became part of the Policy when the Policy was issued. (See Warner Aff. Ex. A.)

[2] In 2006, Decedent had two additional children (the Xu Defendants) and by this time Decedent's other two living children (the Neftci Defendants) were adults.  (Xu Defs.' Rule 56.1 Statement ¶ 5; Pl.'s Rule 56.1 Counter-Statement ¶ 5.)

diagnosed brain tumor.  (Pl.'s Rule 56.1 Counter-Statement ¶ 6.)

On December 3, 2008, Decedent sent another letter to Primerica requesting that his two infant children receive a larger share of the Policy proceeds. (Xu Defs.' Rule 56.1 Statement ¶ 7; Pl.'s Rule 56.1 Counter-Statement ¶ 7.)  In this letter, "irrevocable" appears in parentheses next to the names of Decedent's infant sons but not next to the names of his adult children. (Warner Aff. Ex. F.)  Xu Defendants argue that, by this letter, Decedent designated his infant sons as "irrevocable beneficiaries" as defined by the Policy and thus, no changes to their designation could be made without their written consent.  (See Xu Defs.' Mem. in Opp. to Pl.'s Mot. to Am. ("Xu Defs.' Memo in Opp.") at 10.)  Wang again maintains that Decedent lacked capacity to make these changes. (Pl.'s Rule 56.1 Counter-Statement ¶ 7.)

Primerica received another letter from Decedent, dated December 1, 2008 and signed December 5, 2008 that designated Wang as the Policy's sole beneficiary and Policy owner. (Warner Aff. Ex. I; Pl.'s Affirmation in Supp. of Pl.'s Mot. to Amend ("Pl.'s Affirm.") ¶ 16.)  Wang argues that if Decedent was competent to make Policy changes after his diagnosis, then she is entitled to the Policy proceeds because of this letter. (Pl.'s Affirm. ¶ 3.)  The Xu Defendants argue

that this letter is unenforceable because it was not actually signed by Decedent and they point to, <u>inter alia</u>, a letter in Decedent's name received by Primerica in January 2009, complaining of fraudulent activity in reference to the alleged Policy transfer to Wang. (Xu Defs.' Memo in Opp. at 4.) Xu Defendants also argue that Decedent could not have revoked the designation of his infant children as irrevocable beneficiaries because they did not give written consent. (<u>Id.</u>)

### A. Procedural History

Wang initially filed this action on May 27, 2009 in New York state court asserting her right, as Policy beneficiary, to the Policy's death benefit, and alleging that the October 2008 change in beneficiary was the result of undue influence and contrary to Decedent's expressed wishes. (<u>See</u> Warner Aff. Ex. K.) On June 16, 2009, the case was removed to this Court.

The Xu Defendants moved, in November 2009, to dismiss Wang's claim for lack of standing pursuant to Rule 12(c) and Rule 56 of the Federal Rules of Civil Procedure. (Xu Defs.' Mem. in Supp. of their Mot. to Dismiss ("Xu Defs.' Memo") at 1.) The Neftci Defendants support this motion. (<u>See</u> Neftci Defs.' Memo. in Opp. to Mot. to Dismiss their Cross-Claim at 1.)

A pre-trial conference was held in September 2009, and this Court set a discovery cut-off date of March 31, 2010 and referred general pretrial matters to Magistrate Judge Freeman. (See Minute Order, Sept. 11, 2009.)  The discovery deadline was extended to May 14, 2010.  (See Status Conf. Minute Entry, Mar. 26, 2010.)  By May 2010, all party depositions had been completed (see Xu Defs.' Memo. in Opp. at 7) and certain non-party depositions were to be completed by June 14, 2010 (see Endorsed Letter to Magistrate Judge Freeman, May 11, 2010).

On April 6, 2010, Wang moved to amend her complaint to (1) reduce the amount of proceeds that she was seeking under her original cause of action, which is based on the theory that Decedent lacked the requisite mental capacity to make changes to the Policy after his diagnosis, and (2) add an alternative claim asserting that if the Decedent possessed the requisite mental capacity to make Policy changes, then Wang is entitled to the Policy's entire death benefit as a result of Decedent's letter dated December 1, 2008 and signed December 5, 2008 that named her the Policy's sole beneficiary and transferred ownership of the Policy to her.  (Pl.'s Affirm. ¶ 3.)  The Xu Defendants oppose Wang's motion, arguing that Wang unduly delayed in seeking amendment, Wang's proposed amendment would be futile, and Wang acted with a dilatory motive.  (Xu Defs.' Mem. in Opp. at 7-11.)

6

## II. The Motion to Dismiss for Lack of Standing to Sue

Xu Defendants seek to dismiss Wang's complaint for lack of standing to sue pursuant to Rules 56 and 12(c) of the Federal Rules of Civil Procedure.

### A. Legal Standard for Motions to Dismiss

If, on a motion under Rule 12(c), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56". Fed. R. Civ. P. 12(d). This Court will consider matters outside the pleadings, including affidavits and exhibits submitted by each party, and thus, Xu Defendants' motion will be treated as a motion for summary judgment pursuant to Rule 56.

Rule 56(c) provides that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43, 45 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The party seeking summary judgment bears the burden of showing that no genuine factual dispute exists. Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). After the moving party has made such a showing, the burden shifts to the nonmoving party to raise a triable issue of fact. Anderson, 477 U.S. at 250. On a motion for summary judgment, a court must view the record in the light most favorable to the nonmoving party, resolving all ambiguities and drawing all reasonable inferences in that party's favor. Cronin, 46 F.3d at 202.

## B. Wang's Standing to Sue

Xu Defendants argue that Wang is not the Policy owner nor beneficiary and thus, lacks standing to sue because she suffered no injury in fact. (Xu Defs.' Memo at 7.)

### 1.

To have standing to sue, "the plaintiff must have suffered an 'injury in fact'-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). Xu Defendants argue that Wang has no legally protected interest because Decedent designated her as a "trustee" and this designation was invalid under New York Estates, Powers & Trusts Law

("EPTL") § 13-3.3.[3]   New York courts have held that under EPTL § 13-3.3, designation of life insurance proceeds to a non-existent trust is invalid unless the decedent specifically identifies in the designation form who the beneficiaries are and how the proceeds should be disbursed among them.   See Estate of Stewart, 158 Misc. 2d 349, 354 (N.Y. Sur. Ct. 1993); In re Stein, 131 A.D.2d 68, 69 (N.Y. App. Div. 1987).

Here, it is undisputed that in his Application, Decedent did not designate an existing trust nor identify how funds should be distributed among trust beneficiaries.   (See Xu Defs.' 56.1 Statement at ¶ 3; Pl.'s 5.61 Counter-Statement at ¶ 3; Warner Aff. Ex. B.)   Moreover, neither party argues that Decedent set up a trust after the Policy was issued.   Thus, if Decedent designated a trustee   as the Policy beneficiary, then EPTL § 13-3.3 would apply, and Decedent's designation would be invalid.   However, there is a genuine factual dispute as to whether Decedent designated Wang as a trustee or a co-beneficiary.

---

[3] This Court has jurisdiction pursuant to 28 U.S.C. § 1332 and in such cases, the court must apply state law.   See Sun Life Assurance Co. of Canada v. Gruber, 2007 WL 4457771, at *5 (S.D.N.Y. Dec. 17, 2007) (applying New York law to suit in interpleader where diversity of citizenship existed between two adverse claimants to life insurance policy proceeds) (citing Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78-79).   No party disputes that New York law applies here, and the parties cite exclusively to New York law in their moving papers.   Accordingly, this Court will apply New York law.

2.

"An insurance policy is a contract which, like any other contract, must be construed to effectuate the parties' intent as expressed by their words and purposes." Am. Home Prod. Corp. v. Liberty Mut. Ins. Co., 565 F.Supp. 1485, 1492 (S.D.N.Y. 1983). Under New York law, it is well settled that if the policy terms are clear, then it is the court's responsibility to interpret these terms and the court may properly grant summary judgment as a matter of law. See Hartford Accident & Indem. Co. v. Wesolowski, 33 N.Y.2d 169, 172 (N.Y. 1973). It is equally well settled that if the policy's terms are ambiguous and "the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, then such determination is to be made by the" trier of fact, and summary judgment is inappropriate. Id.; see also, Newin Corp. v. Hartford Accident and Indem. Co., 62 N.Y.2d 916, 919 (N.Y. 1984) (upholding denial of defendant's motion for summary judgment where material question of fact as to the parties' intent was presented by the plaintiffs' affidavits). An agreement is ambiguous if the agreement on its face is reasonably susceptible to more than one meaning. Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569-570 (N.Y. 2002).

Here, the Decedent's Policy, on its face, is reasonably susceptible to more than one meaning.  Wang is listed as "Primary Beneficiary" in the Application and her relationship to Decedent is described as "Trustee to Children/Business Partner".  (See Warner Aff. Ex. B.)  Decedent's adult children are listed in the "Contingent Beneficiary" box, but "Contingent" is crossed out and "Primary Also" is written in the box.  (Id.)  While one could infer, as Xu Defendants argue, that Decedent intended the beneficiary to be a trust, one could also infer, as Wang argues, that listing Wang as a "Primary Beneficiary" and referring to his children as "Primary Also" indicates that Decedent intended for the life insurance proceeds to be divided.  Thus, the Policy's terms admit ambiguity.

Further, Wang has offered evidence extrinsic to Decedent's Policy bearing on his intent at the time of the Policy's execution.  In Wang's affidavit, she testified that Decedent intended to provide her with life insurance benefits, that she sought out the Primerica agent, and that she was present when Decedent met with the agent to complete the Application.  (Aff. of Li-Shan Wang in Opp. of Xu Defs.' Mot. to Dismiss ("Wang Aff.") ¶¶ 5-6.)  Wang also points to a written agreement dated May 17, 1996 and allegedly signed by Decedent, in which Decedent promised to buy a life insurance

policy with a face value of $500,000 for Wang.  (See Id. ¶ 5;
Pl.'s Memo. in Opp. to Xu Defs.' Mot. to Dismiss Ex. A.)   Xu
Defendants argue that Wang's proffered evidence should be
disregarded because the written agreement contradicts Wang's
interpretation of Decedent's policy and Wang is dishonest.
(Xu Defs.' Rep. Memo. at 5-7.)   These arguments highlight why
summary judgment is inappropriate here -- the credibility of
Wang's testimony and what inferences, if any, can be drawn
from the May 17, 1996 agreement are questions to be answered
by the trier of fact.

There is a material question of fact as to Decedent's
intent that cannot be resolved as a matter of law on summary
judgment and thus, Xu Defendants' motion is DENIED.

### III. The Motion for Leave to Amend Complaint

Wang moves to amend her complaint to (1) reduce the
amount of proceeds that she was seeking under her original
cause of action, which is based on the theory that Decedent
lacked the requisite mental capacity to make changes to the
Policy after his diagnosis, and (2) add an alternative claim
asserting that if the Decedent possessed the requisite mental
capacity to make Policy changes then Wang is entitled to the
Policy's entire death benefit as a result of Decedent's letter
dated December 1, 2008 and signed December 5, 2008 that named

her the Policy's sole beneficiary and transferred ownership of the Policy to her.  (Pl.'s Memo ¶ 3.)

### A. Legal Standard for Motions for Leave to Amend

Rule 15(a) provides that leave to amend "shall be freely given when justice so requires".  Fed. R. Civ. P. 15(a).  The Supreme Court has explained that this "mandate is to be heeded" and that leave should be granted absent an apparent reason such as (1) the party seeking to amend has unduly delayed; (2) the party seeking to amend is acting with a dilatory motive; (3) the proposed amendment would cause undue prejudice to the opposing party; or (4) the proposed amendment would be futile.  Foman v. Davis, 371 U.S. 178, 182 (1962).  Whether to allow a party to amend its complaint is within the discretion of the district court.  Id.

The Xu Defendants argue that Wang's motion to amend should be denied because Wang unduly delayed in seeking amendment, Wang's proposed amendment would be futile, and Wang acted with a dilatory motive.  (Defs.' Mem. in Opp. at 7-11.) The Court will address these arguments seriatim.

### B. Undue Delay

Xu Defendants argue that Wang's motion to amend should be denied because Wang unduly delayed in seeking leave to amend.

A court may "deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is

13

offered for the delay, and the amendment would prejudice the defendant." <u>Cresswell v. Sullivan & Cromwell</u>, 922 F.2d 60, 72 (2d Cir. 1990).

Here, Wang moved to amend her complaint approximately 10 months after the original complaint was filed in state court. At the time Wang moved to amend, all parties had been deposed but discovery had not yet closed. (<u>See</u> Xu Defs.' Memo. in Opp. at 7; Endorsed Letter to Magistrate Judge Freeman, May 11, 2010.) Further, the parties still have not submitted a pre-trial order and no trial date has been set. (<u>See</u> Endorsed Letter to Magistrate Judge Freeman, May 11, 2010.) Wang avers that she is adding an alternative theory of recovery because her attorney "did not fully appreciate the case that would be made in favor of [Decedent's] mental competence" prior to discovery. (Pl.'s Memo. in Supp. of Mot. to Amend. ("Pl.'s Memo.") at 1-2.) Wang explains that she filed suit based on her understanding that after Decedent was diagnosed with a brain tumor in mid-2008, he lacked the requisite mental capacity to modify the Policy. (Pl.'s Affirm. ¶¶ 22-23.) However, Wang avers, evidence produced in discovery, specifically Ms. Xu's deposition testimony from March 2010, suggests that Decedent may have been mentally fit until just weeks before his death in April 2009. (<u>Id.</u>) Thus, while Wang maintains that Decedent lacked the requisite mental capacity

during this time, she seeks to add an alternative claim based on a theory that he was mentally competent to make the policy changes. (Id. ¶ 28.)

The Court is persuaded that the basis of Wang's proposed amendment was formed, at least in part, as a result of discovery, including Ms. Xu's deposition testimony, and that this is a satisfactory explanation for Wang's delay.

Moreover, mere delay, "absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend". State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981). The Xu Defendants have made no showing of prejudice or bad faith here.

The Xu Defendants will not suffer any "undue prejudice" as a result of Wang's proposed amendment. Xu Defendants' argument that Wang's proposed amendment would "significantly broaden the issues of this case" is unpersuasive. (See Defs.' Mem. in Opp. at 8.) Wang's proposed amendment involves the same issues, namely the significance of letters that Decedent sent to Primerica between October 2008 and April 2009, that have been at the center of this litigation since Primerica interpleaded Third-Party Defendants. In fact, Xu Defendants' counterclaims against Wang turn on allegations related to these issues. (See Xu Defendants' Ans. and Countercls. at 10-

17.)  Further, Wang does not seek any additional discovery to
support her proposed amendment (see Pl.'s Reply Memo. at 4)
and Xu Defendants offer no reason why any additional discovery
would be needed.

There is also no showing of bad faith here.  The Xu
Defendants argue that Wang unduly delayed seeking leave to
amend because she knew all of the facts upon which the
proposed amendment is based when she filed her original
complaint.  (Defs.' Mem. in Opp. at 7-8.)  However, even if
this were correct, this does not demonstrate bad faith
sufficient to warrant this Court exercising its discretion to
deny leave to amend.  Moreover, cases cited by Xu Defendants
are distinguishable.  For example, in Richardson Greenshields
Sec. Inc. v. Mui-Hin Lau, not only did defendants have
knowledge of the facts underlying their proposed amendment
when they filed their answer, but also, the proposed amendment
would require re-opening discovery.  113 F.R.D. 608, 611
(S.D.N.Y. 1986).

## C. Futility

Next, Third-Party Defendants argue that leave to amend
should not be denied because the proposed amendment would be
futile.  (Defs.' Mem. in Opp. at 9.)

A court may exercise its discretion to deny a party's
motion to amend a pleading when the proposed amendment would

be futile.   Foman, 371 U.S. at 182.   An amendment is considered futile if it could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).   Riccuiti v. N.Y.C. Transit Auth., 941 F.2d 119, 123-24 (2d Cir. 1991). Courts should deny leave to amend only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief".   Id. at 124 (internal citation omitted).   In other words, where the plaintiff's proposed amended complaint has "at least colorable grounds for relief", the court should grant permission to amend.   See Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.   748 F.2d 774, 783 (2d Cir. 1984).

In deciding a motion to dismiss, "the Court ordinarily accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor."   In re Parmalat Sec. Litig., 501 F.Supp.2d 560, 572 (S.D.N.Y. 2007) (citing Levy v. Southbrook Int'l Invs., Ltd., 263 F.3d 10, 14 (2d Cir.2001)).   Further, "the district court is normally required to look only to the allegations on the face of the complaint."   Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).   In certain limited circumstances, a court may consider "documents that are attached to the complaint, ... incorporated in it by reference, [or even] a document upon which the complaint solely relies and which is integral to the

complaint." Connolly v. Dresdner Bank AG, No. 08 Civ. 5018, 2009 WL 1138712, at *3 (S.D.N.Y. Apr. 27, 2009) (paraphrasing Roth, 489 F.3d at 509).

Xu Defendants argue that Wang's Proposed Amendment is futile because Decedent's infant children were designated as "irrevocable" beneficiaries in a letter dated December 3, 2008 and this designation could not be changed absent their written consent, which Wang cannot show exists, under the terms of the Policy. (Xu Defs.' Memo. in Opp. at 8-9.) This argument relies on documents outside Wang's proposed amended complaint[4], and even if the Court were to consider such documents, Decedent's various letters raise factual issues that cannot be resolved on a motion to dismiss. Moreover, Decedent's adult children were also designated as beneficiaries in the December 3, 2008 letter, but "irrevocable" does not appear next to their names and thus, even if Decedent could not have revoked the designation of his infant children as beneficiaries, Decedent could have revoked the designation of his adult children, and Wang would at least have a claim to those proceeds. (See Warner Aff. Ex. F.)

Contrary to what Xu Defendants argue, the fact that Wang's proposed amendment asserts conflicting factual

---

[4] Wang's proposed amended complaint does not, as Xu Defendants suggest, allege that Decedent's infant children were designated as "irrevocable" beneficiaries.

allegations does not demonstrate that the proposed amendment is futile. Litigants have substantial flexibility under Rule 8(d) of the Federal Rules of Civil Procedure to plead alternative, inconsistent theories like those asserted by Wang here. See e.g., Henry v. Daytop Village, Inc., 42 F.3d 89, 95 (2d Cir. 1994) ("Under [Rule 8(d)], a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency."). The cases cited by Xu Defendants are inapposite. In Kwan v. Schlein, 246 F.R.D. 447, 452 (S.D.N.Y. 2007), the Court dismissed plaintiff's second alternative claim because plaintiff failed to allege any facts supporting the alternative claim, and in Nat'l W. Life Ins. V. Lynch, 175 F.Supp.2d 489, 492-3 (S.D.N.Y. 2000), the court held that Rule 8(d)(2) does not permit conflicting assertions of fact within a statement of a given claim and dismissed plaintiff's fraud claim, which alleged that plaintiff relied on a document provided by defendant and that the defendant never provided plaintiff with that document. Here, Wang has pled facts sufficient to support her alternative cause of action, and Wang's assertion that she believes that Decedent was mentally incompetent to make Policy changes does not conflict with the assertion that if Decedent was mentally fit, then Decedent's letter dated December 1,

2008 and signed December 5, 2008 precluded any subsequent
Policy changes.

    The Court therefore finds that Wang's proposed amendment
would survive a motion to dismiss and is not futile.

### D. Dilatory Motive

    Finally, Xu Defendants assert that Wang's motion for
leave to amend should be denied because Wang acted in bad
faith by moving to amend only after realizing that her
original cause of action was "destined to fail". (Xu Defs.'
Memo. in Opp. at 11.)

    A court may deny leave to amend when it appears that
leave is sought in anticipation of an adverse ruling on the
original claims. See PI, Inc. v. Quality Prod., Inc., 907
F.Supp. 752, 764 (S.D.N.Y. 1995) (citing to Ansam Assocs.,
Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d
Cir.1985)). For example, in PI, Inc., the court held that
moving to amend after oral argument on plaintiff's motion to
dismiss was "clearly a dilatory tactic to avoid the dismissal
of [the] action," noting that this was the second time that
the plaintiff had moved to amend after the defendants had
filed motions to dismiss. 907 F.Supp. at 765.

    Here, the Court is persuaded that Wang is moving to amend
not to gain a tactical advantage, but to add an alternative
cause of action that she initially believed was unnecessary

based on her reasonable understanding of that facts at the time.

## IV. Conclusion

For the foregoing reasons, Xu Defendant's motion to dismiss is DENIED and the Wang's motion to amend is GRANTED.

SO ORDERED.

Dated: November 5, 2010

_____
Lawrence M. McKenna
U.S.D.J.